UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOSHUA BRODLEY CASEY #466606, | ) ) ) | |
| Plaintiff, | ) ) | NO. 3:20-cv-00525 |
| v. | ) ) | JUDGE TRAUGER |
| TONY PARKER, et al., | ) ) ) | |
| Defendants | ) | |

## MEMORANDUM AND ORDER

In its previous order, the court granted the plaintiff leave to proceed in forma pauperis and to amend his complaint. (Doc. No. 7.) The court expressly warned the plaintiff, however, not to repeat errors from his original pleadings in his amended complaint. Specifically, the court cautioned that the Federal Rules of Civil Procedure "do not permit the conglomeration of unrelated claims against unrelated defendants in a single lawsuit." (*Id.* at 4 (citing *Proctor v. Applegate*, 661 F. Supp. 2d 743, 780 (E.D. Mich. 2009) ("[P]laintiffs, especially prisoners, do not have free reign to join multiple claims and defendants in any manner they choose. . . . And, Rule 20 does not authorize a plaintiff to 'incorporate into an existing action a different action against different parties and presenting entirely different factual and legal issues.'")).) The court, therefore, instructed that "the plaintiff's amended complaint must not join unrelated claims against unrelated parties." (*Id.*)

The plaintiff did not heed that warning. In his amended complaint, he again asserts multiple unrelated claims and names multiple defendants, none of whom are mentioned or could possibly be implicated by most of the claims. Rule 21 of the Federal Rules of Civil Procedure authorizes the court to "add or drop a party" or "sever any claims against a party" in cases of such misjoinder. Accordingly, the court will consider only the plaintiff's first identified claim—that he

was forcibly subjected to a temperature screening in violation of his right to refuse medical treatment—and will dismiss the other unrelated claims from this action. Fed. R. Civ. P. 21.

## I. INITIAL REVIEW OF CLAIM 1

The Court must still conduct the initial review required of the plaintiff's primary claim by 28 U.S.C. § 1915(e)(2), which requires the court to dismiss the claim if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff sues under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

The plaintiff alleges that on May 18, 2020, a corrections officer entered his cell and "forcefully made [him] do a temperature check for Covid 19." (Doc. No. 8 at 4.) Although the amended complaint provides no further details about the incident, the plaintiff alleged in his

original complaint that after he refused a temperature check, the officer entered his cell "and forced [him] to take [his] temp and scanned [his] back instead of [his] head." (Doc. No. 1 at 2.) The plaintiff claims this action violated his right "to refuse any medical treatment." (Doc. No. 8 at 4.) Instead of the officer who performed the temperature screening, he names Tennessee Department of Correction Commissioner Tony Parker, Core Civic, Warden Raymond Byrd, and "Health Services Dept.," all in their official capacities, as defendants. (*Id.* at 2–3.) In connection with this claim, he seeks to be "paid for [his] pain and suffering and violation of [his] wrights" [sic]. (*Id.* at 6.)

This claim fails for several reasons. First, a suit against state officials and employees, such as Commissioner Parker, in their official capacities is effectively a suit against the state itself, which is absolutely immune from any suit for damages under Section 1983. *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) ("An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents."); *Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (stating that Tennessee has not waived its Eleventh Amendment immunity from § 1983 suits). Such suits may only proceed on claims for prospective injunctive relief, and the plaintiff does not request any such relief in connection with temperature screenings. Moreover, in order to state an official-capacity claim for injunctive relief against a state official under Section 1983, a plaintiff must show a direct causal link between the alleged constitutional violation and an official policy or custom adopted with "deliberate indifference" toward the constitutional rights of persons affected by the policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The Sixth Circuit has held that to establish such a causal link, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 176

(6th Cir. 1987)). The custom or policy must be "the moving force" behind the deprivation of the plaintiff's rights. *Powers v. Hamilton Cty. Pub. Defender Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The plaintiff does not allege that any state policy resulted in the forcible temperature screening about which he complains. To the contrary, he alleges generally that his "point" is that "nobody follow [sic] policy in the prison and a [sic] inmate can't get anything done at all." (Doc. No. 8 at 6.) Accordingly, the plaintiff's official-capacity claim against Commissioner Parker and any other state employee defendants fails to state a claim.

Likewise, official-capacity claims against any Core Civic employees are the same as claims against the corporation itself. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (holding that "individuals sued in their official capacities stand in the shoes of the entity they represent"). *Galloway v. Swanson*, No. 5:09CV02834, 2012 WL 646074, at *8 (N.D. Ohio Feb. 28, 2012), *aff'd sub nom. Galloway v. Anuszkiewicz*, 518 F. App'x 330 (6th Cir. 2013) ("An official capacity claim against an employee of a private corporation is viewed as a claim against the corporate entity itself."). And although a private corporation that performs a traditional state function acts under the color of state law for purposes of Section 1983, it cannot be found liable solely on the basis of respondeat superior. *Thomas v. Coble*, 55 F. App'x 748, 748–49 (6th Cir. 2003). For a corporation to be liable, an inmate must prove that his injury was caused by an action taken pursuant to some official policy or custom. *Id.* at 749 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817 (6th Cir. 1996). But again, the plaintiff does not allege that any corporate policy or custom was a factor in the temperature screening incident. His claims against Core Civic and its employees in their official capacities

4

thus fails to state a claim.[1]

But even if the plaintiff had named proper defendants or identified a policy underlying the temperature check, his allegations simply do not rise to the level of a constitutional violation. The plaintiff is correct that "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan v. Dir. Mo. Dep't of Health*, 497 U.S. 261, 278 (1990). But that right "is not absolute and is particularly susceptible to regulation in the prison setting." *Davis v. Agosto*, 89 F. App'x 523, 528 (6th Cir. 2004). Even a procedure as forcible and invasive as holding an inmate down and suturing his wound is acceptable upon a determination that such actions were "necessary to the health and safety of [the inmate] as well as those around him." *Id.* Other procedures found to be constitutionally acceptable in prison include non-consensual delousing, blood-pressure and weight checks, and even catheterization. *See Leath v. Webb*, 323 F. Supp. 3d 882, 894 (E.D. Ky. 2018) (collecting cases). Accordingly, the forcible medical intake screening of inmates, including "minimally invasive [and] necessary" checks of blood pressure, temperature, and pulse have been held to be constitutionally acceptable, because they are "necessary to ensure the safety of [the inmate] and those around him." *Id.*

The plaintiff's allegation that his back was scanned to check his temperature indicates that the officer used a thermal scanner that required little or no physical contact and no intrusion into his body. He acknowledges that the purpose of the check was to screen him for COVID-19. The United States Court of Appeals for the Sixth Circuit has recently described the COVID-19 pandemic and the risk it poses to prison populations:

> The COVID-19 virus is highly infectious and can be transmitted easily from person

---

[1] The court observes that the plaintiff's failure to allege any state or corporate policy giving rise to his alleged constitutional violations would doom all official-capacity claims against all the named defendants, even if the court had not found them to be improperly joined. Naming high-ranking officials in this manner, therefore, does not constitute a valid basis for joinder of the plaintiff's divergent claims.

5

> to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing.
>
> . . .
>
> The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death.

*Wilson v. Williams*, 961 F.3d 829, 833, 840 (6th Cir. 2020). Prison officials' deliberate indifference to that objectively serious risk would violate inmates' rights under the Eighth Amendment. *Id.* at 840. Taking precautions that include, among other measures, "implementing measures to screen inmates for the virus" constitutes a reasonable response by prison officials to that risk. *Id.* at 841.

Accordingly, the minimal intrusion occasioned by an involuntary temperature scan of the plaintiff's back is so clearly outweighed by the pressing need to control the spread of a deadly pandemic within the prison population that the plaintiff fails to state a viable claim.

## II. CONCLUSION

The plaintiff's claim regarding forced temperature screening is therefore **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted. All remaining claims are **DISMISSED** without prejudice pursuant to Fed. R. Civ. P. 21. This is the final Order denying all relief in this matter. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b). Any appeal from this Order would not be in good faith as required by 28 U.S.C. § 1915(a)(3).

It is so **ORDERED**.

Aleta A. Trauger
United States District Judge

6